UNITED STATES FID. & GUAR. CO. *v.* STATE, for use of WARD, et al.

In Banc. June 11, 1951.

No. 38013 (53 So. (2d) 11)

Snow & Covington, for appellant.

**Tally D. Riddell,** for appellee.

**Hall, J.**

This suit was brought in the name of the State for the use of Rufus E. Ward and his wife Mrs. Wilma Ward against Mrs. Leona Oswald Lutes, a notary public, and

United States Fidelity and Guaranty Company, surety on her official bond as such notary, for damages for breach of the covenant of said bond. The case was tried before the circuit judge by agreement without the intervention of a jury. Judgment was entered against Mrs. Lutes in the sum of $3,000.00 and against the surety company in the sum of $2,000.00 which is the amount of the bond. The surety company alone appeals.

The evidence discloses an almost unbelievable fraud. The notary is the wife of one Wendell Ralph Lutes, an attorney at law who has been disbarred since the events herein related. John E. Mitchell was the owner of a house and lot in the City of Meridian which was worth approximately $3,500.00. On October 11, 1946, Lutes in company with his wife approached Mitchell and advised him that he had a client named Virgil Brown who desired to purchase the property and who would pay $7,500.00 for it; that $500.00 would be paid in cash, out of which Lutes would expect a commission of $250.00, and that Brown would give a deed of trust on it to secure payment of the remaining $7,000.00 Mitchell agreed to this. Later Lutes and his wife returned with a deed from Mitchell to Brown and a deed of trust from Brown to Mitchell which had already been purportedly signed and acknowledged before Mrs. Lutes as notary. Mitchell signed and acknowledged before Mrs. Lutes the deed from himself to Brown, and Lutes handed to Mitchell $250.00 in cash and the purported deed of trust from Brown to Mitchell, which latter instrument was promptly filed for record by Mitchell. It was shown conclusively that Virgil Brown was a fictitious person.

Immediately after this transaction Lutes approached W. B. Dubose and made a proposition to sell him the same property for $2,000.00 payable $600 in cash and $1,400.00 in deferred payments; Dubose and his mother-in-law, Mrs. Elizabeth Smith, were interested in the proposition and agreed to take the property on these terms, and instructed Lutes to have the deed made to Mrs. Smith.

The next morning Lutes and his wife returned and brought a deed in Mrs. Smith's favor which was purportedly signed by Virgil Brown and which had been notarized by Mrs. Lutes. Inquiry was made as to why Virgil Brown was the grantor and Lutes was informed that the purchasers thought that the property belonged to Mitchell. Lutes falsely and fraudulently represented that Brown was a son-in-law of Mitchell and that the title was actually in Brown, and, relying upon this representation, Dubose and Mrs. Smith paid Lutes $600.00 in cash, took the fictitious deed, and executed a deed of trust for the balance of $1,400.00. When Dubose carried the deed to the chancery clerk's office for recording he was advised that a deed of trust for $7,000.00 on the same property had just been filed for record. He immediately accosted Lutes and managed to get his money back and Mrs. Smith then executed a deed to Lutes, purporting to convey the property over to him.

Lutes then entered into a written contract to sell the property to Kenneth B. Hodges and obtained a cash payment of $75.00 but Hodges became suspicious, investigated and found the $7,000.00 deed of trust of record, and declined to go through with the deal. He was unable to obtain a refund of his $75.00 and lost it.

About three weeks later Lutes, representing that he was the owner of the property, made a sale thereof to appellee, Rufus E. Ward, for a consideration of $1,000.00 cash and a balance of $2,000.00 evidenced by a note and secured by a deed of trust thereon in favor of Lutes. Lutes immediately negotiated a sale of the note and deed of trust to one Pigford for $1,600.00 cash and delivered to Pigford a certificate showing good title to the land and security. Shortly afterward someone advised Ward in an anonymous telephone call that Lutes had no title to the property and that it was subject to a $7,000.00 deed of trust to Mitchell. He immediately got in touch with Pigford and upon an investigation of the records they discovered that Lutes had perpetrated an unconscionable

fraud upon both of them. Ward immediately made demand on Lutes for return of his money and Pigford did likewise; Lutes laughed at Pigford and told Ward to go and jump in the river. Ward and his wife who had joined with him in the note and deed of trust brought suit in chancery against Lutes and Pigford; by a cross bill Pigford demanded judgment against Ward for the amount of the note plus interest and attorney's fees in accordance with the provisions of the note, and a final decree was entered awarding Ward and wife a recovery against Lutes in the amount of $3,000.00 and awarding Pigford a recovery against Ward and wife in the amount of $2,000.00 plus interest and attorney's fees. There was no appeal from that decree. Subsequent thereto this suit was instituted, with the result stated in the opening paragraph hereof. Mitchell regained title to the property by foreclosure of the fictitious deed of trust from Brown.

Counsel for both parties on this appeal are in agreement as to the general principle of liability of a notary and his surety in an action for breach of the bond. This principle is succinctly stated in 66 C. J. S., Notaries, Sec. 12, p. 628, as follows: "In those jurisdictions in which a notary is required by statute to give a bond with sureties for the performance of his official duties, he and his sureties, will be liable to an action for any breach of the conditions of the bond, provided such breach is a proximate cause of a loss or injury, although it need not be the sole cause."

Appellant contends that neither of the three false and fraudulent certificates of the notary contributed to or was a proximate cause of the damage sustained by Ward and wife. We are of the opinion, however, that two of these false acknowledgments which were certified by Mrs. Lutes contributed proximately to the loss and damage. By the fraudulent acknowledgment of the deed of trust from Brown to Mitchell, the latter was enabled to regain title to the property through foreclosure proceedings and thereby to deprive Ward of his apparent record

title to property. This deed of trust was not subject to recordation under our statute, Section 856, Code of 1942, unless and until the acknowledgment thereof was proved before a notary or other official authorized to take the same. Without the acknowledgment it could not have been placed of record, even though it might have still been good as between the parties. Unless placed of record it was no notice to subsequent purchasers. The false certificate of Mrs. Lutes, therefore, enabled Mitchell to place the deed of trust of record and gave Mitchell's lien priority so as to put him in position to regain the title. Consequently it would be a difficult matter for us to say that the fraud of the notary was not a proximate, contributing cause of Ward's damage.

Moreover, by the further fraudulent acknowledgment of the conveyance from the mythical Virgil Brown to Mrs. Elizabeth Smith, the title to the property was purportedly vested in her; after her deal was rescinded Mrs. Smith conveyed the property to Lutes, so that by virtue thereof the legal title was purportedly vested in Lutes and he was thereby put in position to claim to be the legal owner of the property and perpetrate the fraud on Ward and wife. The trial court found from the evidence that these spurious instruments, to which Mrs. Lutes had appended the false certificates of acknowledgment, set in motion the final result which caused Ward and wife to suffer a loss. The court was sitting as a trier of facts, a jury having been waived by agreement of the parties, and his finding should be accepted unless manifestly wrong.

In 38 Am. Jur. p. 710, Negligence, Sec. 59, it is said: "Those consequences are deemed immediate and proximate which a person of average competence, experience, knowledge, and sagacity, being in the situation of the person whose conduct is in question, and having the same opportunities of observation, reasonably might be expected to foresee as likely to follow on such conduct." Applying this to the situation of the notary on the occa-

sions of these false certificates of acknowledgment, we are of the opinion that she should have reasonably foreseen that the instruments in question would be used for the purpose of perpetrating some fraud similar to that which was in fact perpetrated in this case.

Counsel for both sides have cited numerous cases on the subject of proximate cause. It would unduly burden this opinion to quote from all of them, but we select as one well reasoned authority, abundantly supported by citations, State ex rel. Matter v. Ogden, 187 Mo. App. 39, 172 S. W. 1172, 1174, wherein it is said:

"If a notary makes a false certificate, and an injury results therefrom to another, the notary and his sureties are liable. State ex rel. v. Webb, 177 Mo. App. 60, loc. cit. 65, 164 S. W. 184; State ex rel. [Barringer] v. Hawkins, 103 Mo. App. 251, loc. cit. 257, 77 S. W. 98; Hatton v. Holmes, 97 Cal. 208, 31 P. 1131; People [for Use of Munson] v. Bartels, 138 Ill. 322, 27 N. E. 1091. They are liable whether the false certificate is valid or invalid, if made in apparent conformity to legally constituted authority, but in excess or perversion thereof, and an injury results therefrom, because in such case the act is done by color of the office. State ex rel. [Heit Kamp] v. Ryland, 163 Mo. 280, loc. cit. 287, 63 S. W. 819. Notaries are intrusted with high and important functions. Their certificates are made authentic evidence of titles by which we hold our lands, and by which they pass from one to another, and which endure from generation to generation.

" 'Their responsibility is as high as their trust, and a notary who officially certifies as true what he knows to be false violates his duty, commits a crime, . . . binds himself, and binds his sureties.' Rochereau v. Jones, 29 La. Ann. 82, loc. cit. 85.

". . . The fact that the fraudulent certificate was one of a number of things inducing relator to part with his money, and thereby suffer a loss, does not prevent the certificate from being a cause, and a proximate cause, of such loss. For though the official fraudulent act of

the notary be accompanied by other acts assisting in the production of the loss, yet if there is a natural and continuous sequence from such fraudulent official act to said result, and but for that act the result would not have happened, then such act is the cause, and the proximate cause, of the result, even, though another cause may have arisen and joined in producing the result. If the false certificate of the notary 'was necesary to the accomplishment of the loss,'' then relator may recover of the notary and his surety, even though relator may have believed other statements made by Ogden. State [to use of Kleinsorge] v. Meyer, 2 Mo. App. 413, loc. cit. 415; State ex rel. [Barringer] v. Hawkins, 103 Mo. App. 251, 77 S. W. 98; Joost v. Craig, 131 Cal. 504, 63 P. 840, 82 Am. St. Rep. 374.

''. . . In this case, the damages arising from the fraudulent official act of the notary undoubtedly reached through the transaction to relator's loss. and was the cause thereof, and the damage caused by the fraudulent official act of the notary is not separable from the damage caused by the fraudulent acts of Ogden as an individual. The undertaking of the surety on the bond in this case was that the notary would 'faithfully' perform his official duty, and the statute gives a remedy to any person injured.''

Another case on the same subject is Aetna Casualty & Surety Company v. Commonwealth to Use of Andres, 233 Ky. 142, 25 S. W. (2d) 51, 52. In that case a firm of real estate agents, one of whom was also a notary, induced Mrs. Andres, an illiterate widow, to execute a deed which had been prepared with the name of the grantee in blank. She thought that this deed was to be a part of the consideration in a trade for other property, for that is what the real estate agent and notary told her. It was not in fact a part of the consideration because the additional money which she was paying was sufficient to purchase the other property. Subsequently the notary inserted as grantee in the deed the name of

his partner's father; later the property therein conveyed was sold to an innocent purchaser and thereby Mrs. Andres, the grantor, lost it. The circuit court granted judgment against the notary's surety which was affirmed on appeal, the court saying, in part:

"It is insisted that the surety in the bond of the notary public is not liable because the wrongful act of the officer was not the proximate cause of the loss sustained by the plaintiff. A notary public is liable on his official bond, for wrongful official acts resulting in loss or injury. It is not necessary that the wrongful act of the notary shall be the sole cause of the loss. If it is a concurring cause and plays a part in bringing about the injury, the liability for the loss is fixed. 46 C. J. 526, Section 43 [66 C. J. S., Notaries, Section 11]; State [ex rel. and to Use of Kansas City Title & Trust Co.] v. Otto, 220 Mo. App. 429, 276 S. W. 96; State [ex rel. Meinholtz] v. American Surety Co. (Mo. App.) 254 S. W. 561; State [ex rel. Matter] v. Ogden, 187 Mo. App. 39, 172 S. W. 1172; Blaes v. Commonwealth, 96 S. W. 802, 29 Ky. Law Rep. 908; Lacour v. National Surety Co., 147 La. 586, 85 So. 600, 18 A. L. R. 1295; Howcott v. Talen, 133 La. 845, 63 So. 376, 49 L. R. A. (N. S.) 45; Rochereau v. Jones, 29 La. Ann. 82.

"The certificate of the notary in this case was essentially false. The grantor did not sign or acknowledge a deed to Elwood M. Earl, but the notary uttered a certificate to that effect. By reason of that certificate, in part at least, the title of Mrs. Andres was divested, and her property was lost. State [ex rel. Meinholtz] v. American Surety Co. (Mo. App.) 254 S. W. 561. It is argued that the deed was signed by mark in the presence of two witnesses, and the fraud could have been perpetrated without the notary's certificate. But that was not the course of conduct followed by the perpetrators of the fraud. The notary public acted officially, attached his certificate to the instrument, and thereby helped to deprive Mrs. Andres of the title to her farm. If such had not been the case, and Mrs. Andres could have recovered her farm,

the notary public would not have been liable to her, although he might have been liable to any person that bought the farm and lost it by reason of the false certificate. The official act of the notary, coupled with his other acts, effectually divested the title of Mrs. Andres, and thereby inflicted a loss upon her.

. . . . . .

"The principle running through the authorities is the same. The divergence arises in its application to the particular facts of the different cases. Where a notary is called on to perform an act which he is authorized by law to perform, and he does so carelessly or fraudulently, he and his surety are liable for any loss proximately resulting therefrom. 20 R. C. L. Section 17, p. 335. A notary public is not an insurer, but he is under a duty to his clients to act honestly, skillfully and with reasonable diligence. 46 C. J. p. 524, Section 38 [66 C. J. S., Notaries, Section 10]; Com. [for Use of Green], v. Johnson, 123 Ky. 437, 96 S. W. 801, 29 Ky. Law Rep. 897, 124 Am. St. Rep. 368, 13 Ann. Cas. 716; Samuels v Brand, 119 Ky. 13, 82 S. W. 977, 26 Ky. Law Rep. 943; Clapp v. Miller, 89 Okl. 38, 213 P. 854. . . .

". . . The fact that the fraud of the notary in his capacity as real estate agent operated concurrently with his official act did not defeat the liability on the official bond. The very act of the notary public in his official capacity was an essential factor in divesting the title to the land, and it enabled the real estate agents to consummate the fraud. The act was plainly a breach of the covenant in the bond that the notary would well and properly discharge his duties."

It is further argued by appellant that the surety is not liable in this case because there is no evidence showing that Mr. and Mrs. Ward relied on either of the false certificates of the notary. In a number of cases there is found a statement to the effect that the injured party must have relied on the notary's certificate before he can recover, but it is readily conceivable that if this

rule should be applied in every case the rankest types of fraud could be committed by a notary in his official capacity with impunity. Illustrative of this is the Andres case, last cited above. In that case a fraud was perpetrated upon her by the notary and she knew nothing of it until many months later; there was no reliance by her upon any notarial certificate, and yet she was permitted to recover. Sec. 4034, Code of 1942, provides: "The bonds of all public officers shall be made payable to the state, and shall be put in suit in the name of the state for the use and benefit of *any person injured by the breach thereof;* . . ." (Italics supplied.) Under the statute any person injured by the breach of the bond is entitled to recover, and there are no limitations or restrictions insofar as the liability of the officer and his surety are concerned so long as the damage is the result of the breach. The statute does not require that there be reliance by the injured party. The Missouri statute is in almost exactly the same words. This same contention of reliance by the injured party upon the act of a notary was raised in the case of State ex rel. Nelson v. Hammett, Mo. App., 203 S. W. (2d) 115, 120. The Court cited the Andres case, supra, as an instance where the rule of reliance was not required, and said further:

"Our statute, section 13364, R. S. Mo. 1939, Mo. R. S. A. [R. S. 1949, Section 486.050], provides that a notary bond 'may be sued on by any person injured'. See, also, State to use of Kleinsorge v. Meyer, 2 Mo. App. 413. In State ex rel. Sappington v. American Surety Company of New York, Mo. App., 41 S. W. (2d) 966, the notary falsely certified that the plaintiff, husband in a divorce suit, had subscribed and sworn to the petition. Plaintiff obtained a divorce from the defendant by default. In a suit on the bond by the wife it was alleged in the petition that by reason of the false certificate of the notary she had been deprived of the support of her husband for the space of one year, and that she had suffered other damages. The court held that the affidavit

in the divorce case was jurisdictional, and that the act of the notary was the proximate cause of defendant's injury. Of course, in that case there was no reliance upon the certificate by the plaintiff, yet, she was permitted to recover because she was damaged by the act of the notary. The case of Aetna Casualty & Surety Co. v. Commonwealth, supra, is similar, in many of its facts, to the case at bar. In that case the grantor in a deed was permitted to recover on the notary's bond because of a false certificate of acknowledgment, resulting in the property being conveyed to an innocent purchaser to the loss of the grantor. We think there is no merit in the contention that there must be a showing of reliance of the relator, in every instance, upon the false certificate, in order to make out a case against the surety on the bond.''

We think that the decision in the last cited case is sound and that appellees should not be deprived of a recovery because at the time of the fraud they did not see or know of the false acknowledgments in their chain of title. The judgment of the lower court is therefore affirmed.

Affirmed.