659 So.2d 860 (1995)
Tim HOLLIDAY
v.
PIZZA INN, INC. and Jackie's International, Inc.
No. 91-CA-01106-SCT.
Supreme Court of Mississippi.
August 3, 1995.
D. Briggs Smith, Jr., Smith Phillips Mitchell & Wilroy, Batesville, for appellant.
Robert H. Harper, Shuttleworth Smith McNabb & Williams, Memphis, TN, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
HAWKINS, Chief Justice, for the Court:
On May 11, 1988, appellant Tim Holliday filed a Complaint against Pizza Inn, Inc., Jackie's International, Inc., and Billy Gray d/b/a County Line Grocery[1] in the Circuit Court of Tate County asking for $679,700.95 in compensatory damages and $1,000,000 in punitive damages. Pizza Inn, Inc., (hereinafter "Pizza Inn") filed a separate answer on July 5, 1988, and on September 15, 1988, Jackie's International, Inc., (hereinafter "Jackie's") filed their own separate answer. Both sides conducted extensive discovery. On March 29, 1991, Pizza Inn and Jackie's filed a Defendants' Motion for Summary Judgment. Holliday replied with his Plaintiff's Response to Motion for Summary Judgment on July 3, 1991, which was answered in turn on July 15, 1991, by a Defendants' Rebuttal to Plaintiff's Response to Their Motion for Summary Judgment. On October 21, *861 1991, the court rendered a judgment granting summary judgment for the defendants. We affirm.

FACTS
On the night of June 26, 1987, Holliday and his friend, Eric Brownlee, officiated a Little League baseball game in Greenleaf.[2] After the game, they drove to the Pizza Inn in Senatobia. Upon arrival Holliday was asked by his friend and Pizza Inn manager, Crystal McGrew, to help deliver some pizzas. Holliday knew McGrew primarily through the four or five after-hour parties that they had had at the Pizza Inn over the preceding two months.[3] Although not a Pizza Inn employee, Holliday agreed and the two of them drove off to make the deliveries. By the time they returned plans were being made by the Pizza Inn employees to hold a party later that night at the restaurant. At 10:30,[4] the doors to the public entrances were locked, the "closed" sign hung on the door, and McGrew counted the money and food and checked the register off. She then took some cash out of the register and left with Holliday and two others to buy some beer, whiskey, and wine. Because Tate County is dry, the four drove to Panola County for purchases, where McGrew bought four cases of beer, a pint each of Crown Royal and Jim Beam whiskey, and six or seven fifths of Strawberry Hill wine. Holliday, only seventeen years of age, waited in the car. They then returned to the Pizza Inn. Soon several other people arrived and entered through the employee entrance. Festivities began. The group drank, cooked pizzas and smoked some marijuana provided by McGrew. According to Holliday, everyone there including him, smoked marijuana.
About an hour and a half later, Holliday and fellow reveler Gary Allen had a scrape. According to Holliday:
Well, we had all been playing "quarters." That's where you bounce the quarters into the cup, drink the beer. And Gary came over and he picked up the pizza that me and the people that was sitting where I was sitting had made. And he picked it up, and the like cheese and stuff was falling off, you know, and he was drunk and he just slammed it on the table and pizza went all over everybody. And we got to pushing and shoving one another and we got to falling across the tables, and when we fell he bumped his head on something, like on the side back here, ... and it made him bleed.
And when we got up, you know, his head was bleeding so they took him outside.
Soon after Allen had been taken away, Holliday went outside to check on him. Unable to find him, Holliday went back inside and was then told that Allen had been taken to the hospital.
Holliday and a friend then began telling everyone to leave the Pizza Inn so that they could straighten up the restaurant. As they were doing this, Holliday and Perry "Bubba" Smith, whom Holliday had met just that night, began to argue about Holliday's fight with Gary Allen.
I told him to just go on and leave. Chris had told everybody to leave, you know, except for like me and Eric Brownlee and the people that worked there, you know, so we could clean everything up.
And I told him to leave and he was like  he was walking outside, you know, he was just walking normal, and he come at me and stabbed me, and I went over. Holliday also stated that:
I never knew that he was coming at me to hurt me. You know, I thought he was just leaving. And when he got close enough to me for me to realize that he was  you know, that he was coming at me, it was too late, the knife was in me.

*862 And when he stabbed me, I kind of like  scrunched over and he pulled it out and he went to stab me again and I caught his arm. And, you know, I just fell to my knees. And everybody  the girls in there were screaming and I was telling them, "He stabbed me. Get him off of me."
And he told one of my friends that was there, which was Eric Brownlee  you know, I remember this very well  he goes  you know, I was telling them, "Get him off of me," you know, and he told Eric, he said, "If you don't go on I'm going to finish him off."
... .
You know, this guy's sitting there holding a knife and threatening that he's going to go on and finish me off, kill me. So I guess Eric went on into the kitchen or something  you know, I don't know this, I didn't see it because I was scrunched over  but I was told that Eric went in the kitchen or back in that area to find something to hit him with to get him off of me. And as Eric and left [sic] to get something he jumped up and ran out the back door and hit one of my other friends in the chest and run to his truck.
Holliday was taken to the hospital where he underwent the first of the three to five operations he would be subjected to over the following two years. When asked how he felt at his December 11, 1990, deposition, he said, "I guess I'm tender there. You know, if I'm bumped there, I tense up. So I guess that's from going through all that I've been through. You know, I'm still  I'm hesitant. You know, I don't try to do things that I did do." He also stated that:
Well, I have muscle spasms. You know, like my stomach can knot up real bad and I have to lay there until it passes. But, I mean, it's not doing it like it was there the first few years, you know, where I couldn't use the bathroom, and instead of going to the bathroom I threw up. You know, it's not doing that no more, thank God.
When asked if he thought that Crystal McGrew had authority from Pizza Inn to have this party, he answered, "Well I think that, you know  or I feel that if Pizza Inn didn't know that she was doing it, that's Pizza Inn's fault. I mean, because it had been going on for months and everybody else in town knew about it." He further stated that he did not think that there was any risk involved in going to the Pizza Inn parties because, "there the times before, you know, nothing had come of it and no  no arguments, you know, no nothing." When asked if he thought that there was anything that McGrew had or had not done which caused him to be stabbed, he replied, "Well, it would be  I think it would be unfair for me to say. I mean, like we had been  she had been having a party there, you know, a long time before that. It was just that one bad apple got in the barrel, you know."
At the time of the ill-fated party, James Lott was the Vice President and Chief Financial officer of Jackie's International. Lott admitted in an affidavit filed May 21, 1991, that Crystal McGrew was employed by Jackie's as the manager of the Senatobia Pizza Inn when Holliday was stabbed. He further stated that she did not have the authority and knew that she did not have the authority, either to allow people into the Pizza Inn after hours or to allow people to consume alcohol and use marijuana on the premises. According to Lott, McGrew was not acting for Pizza Inn when she allowed any of these party-oriented activities to take place.
On June 6, 1991, Lott was deposed by Tim Holliday's attorney, Briggs Smith. Much of this deposition is concerned with the various means used by Jackie's International to run their chain of Pizza Inns. According to Lott, the manual which guides the operations of the individual restaurants was supplied by Pizza Inn although Jackie's also gave each franchise a set of policies and procedures. He also stated that Jackie's monitored the day-to-day operations of the store through personal visits, phone calls, and by reviewing weekly figures. In regard to the weekly figures review, Lott said:
Well, they take the inventory to arrive at the food usage for the prior week and comparing [sic] that with sales to determine accurate food cost. That will tell you, one, if all sales are being reported, or if there is pilferage with your products. There may be pilferage or perhaps they *863 are making up too much dough and they shouldn't be making that much and they're throwing a lot of it away. Those are the type things, I believe, they would arrive at through those figures.
According to Lott, for an irregularity between the food usage and the sales to be detected, there would have to be a noticeable difference in the food cost, and the most difficult problem to uncover would be an employee stealing food. Lott also stated that a member of the public would have the right to expect that Jackie's employees followed the law and that Jackie's field managers were under a duty to see that their employees did so follow the law.
After the stabbing, Lott and Director of Operations Murry Greenlee conferred and decided to request McGrew's resignation. He deposed that when he told McGrew of this decision, "I cited to Crystal that, according to Police Department Investigator Sammie Webb, that there had been illegal activity there, that that was definitely beyond the scope of her employment to allow such to exist. She had to have had personal knowledge, and that the company would no longer allow her to serve in the capacity as a manager of our store." Lott stated he did not remember if there was any discussion about prior incidents at the Pizza Inn when he spoke to McGrew. He did state however, that he and Murry Greenlee had no knowledge of these parties until after Holliday was stabbed. McGrew resigned.
Murry Greenlee was also deposed by plaintiff's counsel. He agreed with Lott's affidavit that McGrew was acting outside the scope of her employment when she hosted the Pizza Inn party. He also described McGrew's training process, saying that she did not go to a school run by Pizza Inn, but instead received on-the-job training at Jackie's-run Pizza Inns in Aberdeen and Jackson, Tennessee. He stated that a Jackie's supervisor visited each restaurant more than once a week and that during these visits the supervisors would pull inventories, and check cash, deposits, schedules, cleanliness, and quality. As far as detecting an after-hours party, Greenlee said:
The only way that they would become aware of a situation like that would to just be accidentally in the area or somebody tell them... . We tried to make ourself aware of what was going on in these stores 24 hours a day, but there ain't no way possible to be in all these stores 24 hours a day, seven days a week.
According to Greenlee there was no other policy in place to discover illicit after-hours activities. Also, no changes were made in this after-hours policy after the stabbing. He, like Lott, claimed that he did not know that several parties had been held at the Pizza Inn until after Holliday had been stabbed. Finally, Greenlee stated that he expected Jackie's employees to follow the law.
After Pizza Inn and Jackie's filed their March 29, 1991, Defendant's Motion for Summary Judgment, Holliday filed a Plaintiff's Response to Motion for Summary Judgment on July 3, 1991, which was answered on July 15, 1991, by a Defendants' Rebuttal to Plaintiff's Response to Their Motion for Summary Judgment. Judge Baker handed down a Final Judgment granting summary judgment for Pizza Inn and Jackie's on October 21, 1991.

LAW
Integral to Holliday's claim of an erroneous granting of summary judgment is whether Pizza Inn and Jackie's either knew or in the exercise of due care should have known of the after-hours party activities at the Pizza Inn.
Rule 56 of the Mississippi Rules of Civil Procedure provides:
(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
(c) Motion and Proceedings Thereon. The motion shall be served at least ten days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. *864 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages.
Rule 56, Miss. Rules of Civ.Pro.
Rule 56 essentially requires a judge to make two findings before granting a summary judgment. First, there must be no genuine issue to a material fact and second the movant must be entitled to judgment as a matter of law.
The court correctly held there were no genuine issues as to any material fact. There was no dispute as to the circumstances surrounding the party at the Pizza Inn or the fight itself. The deposition of Tim Holliday, and the affidavits of party-goers Crystal McGrew, Rachel Brownlee, Don Woolfolk, and Stacy Scott all tell essentially the same tale. McGrew allowed several of her friends to have a party at the restaurant after closing hours. At the party the revelers ate, drank, and became merry through the tonics of pizza, beer, and marijuana. About an hour and a half later, the party took a violent turn when Tim Holliday and Gary Allen began fighting. Soon after the end of this altercation, which resulted in a head injury and a trip to the hospital for Allen, Holliday and Perry "Bubba" Smith exchanged words and, without warning, Smith stabbed Holliday in the abdomen.
There is no dispute as to McGrew's status as a Jackie's International employee. Lott and Greenlee both stated that McGrew was acting outside the scope of her employment when she threw the party. They expected their employees to follow the law. Both also stated that neither of them knew that these parties were going on until after the stabbing.
As to being entitled to judgment as a matter of law, Holliday's suit against Pizza Inn and Jackie's is essentially based on negligence. "To prove negligence, the plaintiff must show, by a preponderance of the evidence: duty, breach of duty, proximate cause, and damages." Skelton v. Twin County Rural Electric Association, 611 So.2d 931, 936 (Miss. 1992). The uncontroverted facts show Holliday has failed to prove the first three. First, Pizza Inn and Jackie's did not owe Holliday a duty upon which liability could be based; second, any duty that they did owe him was not breached, and, third, if there was a duty and a breach thereof, the two companies did not proximately cause his injuries.
There are two possible legal theories upon which a duty owed by Pizza Inn and Jackie's to Holliday might have been founded: master and servant liability and premises liability. One of the best summaries of master and servant liability can be found in Canton Cotton Warehouse Co. v. Pool, 78 Miss. 147, 28 So. 823 (1900):
The inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it,  whether in doing the act he uses the appliances of the master,  but whether, from the nature of the act itself as actually done, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account.
28 So. at 824.
We added in Barmore v. Vicksburg, S. & P. Ry. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627 (1905).
In determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he at the time doing any act in furtherance of his masters' business? If a servant, having completed his duty to his master, then proceeds to prosecute some private purpose of his own, the master is not liable; but if the servant, while engaged about his master's business, merely deviates from the direct line of duty to accomplish some personal end, the master's *865 responsibility may be suspended, but it is re-established when the servant resumes his duty.
38 So. at 212.
Was McGrew acting in furtherance of Pizza Inn and Jackie's business in holding her party or engaged in a private purpose of her own? Clearly the party in no way furthered or was meant to further the business of McGrew's employers.
McGrew never claimed that she invited her friends over in an effort to improve the fortunes of Pizza Inn or Jackie's International. Indeed, many of the party-goers' actions such as stealing pizzas and fighting were against her employers' interests. She also never claimed that she had any authority to throw the party or that Pizza Inn or Jackie's had knowledge of the parties. Furthermore, Lott and Greenlee both testified that she was acting outside the scope of her employment by having these after-hours party and that they knew nothing of them until Holliday was stabbed. We find it impossible to conceive of a scenario in which an after-hours party featuring underage dry county drinking, the use of illegal drugs, and the theft of food in any way furthered the business of either Pizza Inn or Jackie's International. To the contrary, it is difficult to imagine a situation which would be more in the private interest of the employee and less in the interest of the employer. Pizza Inn and Jackie's were entitled to judgment as a matter of law on the premise of a master and servant relationship with McGrew.
The doctrine of premises liability might also have been the source of a duty owed by Pizza Inn and Jackie's to Holliday. Holliday argues under this legal theory that he was an invitee at the restaurant while Pizza Inn and Jackie's claim that he was merely a licensee. Skelton states that:
[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation or other right.
A landowner owes a licensee only the duty to refrain from willfully or wantonly injuring the licensee, unless the landowner engages in active conduct and knows of the licensee's presence. A landowner owes a business invitee a duty of reasonable care for the invitee's safety.
611 So.2d at 936 (citations omitted) (citing Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 37 (Miss. 1989)).
When one applies the law to the case at bar, one must conclude that Holliday was at best a licensee at Pizza Inn when he was stabbed. Owner Pizza Inn and Jackie's did not extend an actual or implied invitation to Holliday to come to their restaurant after hours to break the law and his doing so was not in any way in their mutual interest. Holliday fits more easily into the category of one who enters upon the property of another for his own convenience, pleasure, or benefit although there is some doubt as to whether he had the license or implied permission of the owners. As the most that Holliday could have been was a licensee, and as the landowner did not engage in active conduct or know of the licensee's presence, the greatest duty that landowner's Pizza Inn and Jackie's could have owed Holliday was to refrain from willfully or wantonly injuring him. Since the two companies did not so injure Holliday, their duty to him as a licensee was fulfilled. Any lawsuit based on an alleged breach of this duty must therefore fail.
Moreover, even if one were to assume that Pizza Inn and Jackie's did owe Holliday a duty, and that they did breach that duty, one must still conclude that the two companies did not proximately cause his injuries. One of the most often quoted passages concerning proximate cause can be found in Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34 (1943):
Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence *866 is relegated to the position of a remote and, therefore, a nonactionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof. The question is, did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury?
13 So.2d at 36.
If one assumes that Pizza Inn and Jackie's did owe and breach a duty to Holliday and then asks the succession of events question posed by Bullock, one must conclude as a matter of law that Bubba Smith's act of stabbing Holliday constituted a new and independent cause which intervened between any negligence by the two companies and the injury to Holliday. Simply put, there is no evidence in the record that would allow one to find that Pizza Inn and Jackie's proximately caused Holliday any harm.
As there was no issue as to a material fact, and as defendants Pizza Inn and Jackie's International were entitled to judgment as a matter of law, the granting of summary judgment is affirmed.
AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS and SMITH, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion.
McRAE, Justice, concurring in part and dissenting in part:
I agree with the majority's decision to affirm the lower court's grant of summary judgment in favor of the defendants, Pizza Inn and Jackie's International. However, Pizza Inn manager, Crystal McGrew, had no authority to throw an after-hours private party on the premises. There is no reason, therefore, to reach the conclusion that Holiday was "at best a licensee at Pizza Inn when he was stabbed," or even to entertain any discussion as to whether he was an invitee or licensee. Accordingly, I concur in the results only.
NOTES
[1] Billy Gray d/b/a County Line Grocery is not a party to this case on appeal.
[2] This account of the events of June 26, 1987, is taken unless otherwise noted from the deposition of Tim Holliday given on December 11, 1990.
[3] McGrew, in an affidavit taken in May 1991, said that they had been having these Pizza Inn parties for only four or five weeks but that each week they had had three or four parties.
[4] Crystal McGrew states in her May 1991 affidavit that the restaurant closed at 11:00 instead of 10:30. She also states that these events took place on June 25, 1987, and not June 26.