## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2003-CA-00652-SCT

*L. B. GULLEDGE, LINDA R. GULLEDGE,*
*FREDERICK J. GULLEDGE, ELBERT GULLEDGE,*
*DARRYL A. GULLEDGE, ALL INDIVIDUALLY,*
*AND ON BEHALF OF THE WRONGFUL DEATH*
*BENEFICIARIES OF CHARLENE A. GULLEDGE,*
*LINDA R. GULLEDGE, FREDERICK J. GULLEDGE,*
*ELBERT GULLEDGE, DARRYL A. GULLEDGE*
*AND L. B. GULLEDGE*

*v.*

*DEBORAH SHAW, INDIVIDUALLY; UNKNOWN*
*SURETY ON NOTARY BOND; MERCHANTS AND*
*FARMERS BANK, A MISSISSIPPI CORPORATION,*
*ALL JOINTLY AND SEVERALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/22/2003 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BARRETT JEROME CLISBY |
| | D. REID WAMBLE |
| ATTORNEYS FOR APPELLEES: | MICHAEL LEE DULANEY |
| | D. KIRK THARP |
| | JOHN S. HILL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The plaintiffs, wrongful death beneficiaries of Charlene A. Gulledge, filed suit against Deborah

Shaw, Merchants & Farmers Bank, and an unknown surety in the Circuit Court of Marshall County.  The

complaint alleges that but for Shaw's negligence in notarizing the forged signature of Stratford P. "Sonny" Childers on his daughter's driver's license application, Childers would not have been dismissed as a defendant in a wrongful death action arising from an automobile accident caused by the daughter's negligence. Moreover, the complaint asserts that as a proximate result of Sonny's dismissal, the plaintiffs were prohibited from collecting any portion of the judgment from Sonny. Gulledge invoked the doctrine of respondeat superior. Further, the complaint alleges fraud, negligence per se, misrepresentation, and negligent supervision.

¶2. Defendants moved for dismissal pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, and the circuit court granted the motion. In its opinion, the court stated that it was "unable to find any case that would extend a Notary's liability where the Notary's wrongful or negligent act was not the proximate cause, or the cause in fact, of the damage suffered." The court held that it was unable to find any set of facts, within the parameter of the pleadings, exhibits, or argument that would justify relief.[1]

**FACTS**

¶3. On August 1, 1996, Deborah Shaw, a notary public and employee of Merchants and Farmers ("the Bank"), notarized the forged signature of Sonny Childers on his fifteen-year-old daughter Alice Childers's Mississippi driver's license application. *See* Miss. Code Ann. §§ 63-1-23 & -25 (Rev. 1996). Sonny, Alice's father, did not appear before Shaw so that she could witness the signature. Rather, as the circuit court ruled, Marjorie Childers, Sonny's wife, forged Sonny's signature. At the time in question, Shaw's job responsibilities at the Bank included performing the duties of a notary public.

---

[1]The trial court's ruling was limited to the negligence claim. It made no mention of the allegations regarding fraud, misrepresentation, negligence per se, or negligent supervision. However, Gulledge does not brief these issues and, like the trial court, instead focuses on the negligence claim.

¶4. Sonny was also an employee of Merchants and Farmers. Shaw had known Sonny since she started working at the Bank. Shaw met Marjorie soon after starting her job in 1988 or 1989. Shaw also knew Alice. In her deposition, Shaw stated that she was not the only notary at the Bank on August 1, 1995. Shaw stated that she did not charge Marjorie a fee for notarizing the application. In her notary log, Shaw described this document as "driver's license for Alice." In addition, she described Marjorie as "wife of employee / customer." Shaw stated that the only time she ever notarized a signature when the person did not appear before her was when she notarized Alice's application. Alice subsequently submitted the application to the Mississippi Department of Public Safety and received her driver's license.

¶5. On December 1, 1996, Charlene Gulledge was killed in an automobile accident caused by Alice's negligence. The Plaintiffs (collectively, "Gulledge") filed a lawsuit against Alice, Sonny, and Marjorie. Sonny maintained that he had no knowledge of the forged signature. Because Sonny never signed the driver's license application, he was dismissed from the lawsuit. After a trial, the court entered judgment for Gulledge in the amount of $1,012,000.00. Gulledge was able to collect only $115,000.00 of this judgment. In the present action, the complaint requests damages in an amount determined by a jury or, in the alternative, $870,000 plus eight percent interest per annum from the date of the judgment.

## DISCUSSION

### I. Liability of Shaw and the unknown surety.

¶6. Our standard of review in considering motions to dismiss is well-settled. The grant or denial of a motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises a question of law that this Court reviews de novo. *Black v. City of Tupelo*, 853 So.2d 1221, 1223 (Miss. 2003). To grant such a motion, "there must appear to a certainty that the plaintiff is entitled to no relief under any set

of facts that could be proved in support of the claim." ***Little v. Miss. Dep't of Human Servs.***, 835 So.2d 9, 11 (Miss. 2002). Thus, a Rule 12(b)(6) motion tests the legal sufficiency of the complaint. ***Id.***

¶7.     However, where a trial judge considers matters outside the pleadings, motion to dismiss and response, the motion ceases to be one for dismissal under Rule 12(b)(6). ***Rein v. Benchmark Constr. Co.***, 865 So.2d 1134, 1142 (Miss. 2004). Rather, it is appropriately considered as a motion for summary judgment under Rule 56. ***Id.*** In ***Rein***, the trial court considered the plaintiff's complaint, as well as the defendant's answer, "along with the response to the motion to dismiss *and the accompanying exhibits*." ***Id.*** (emphasis added). As a result, we held that the trial court improperly labeled the motion as one for dismissal under Rule 12(b)(6). ***Id.*** Instead, the court should have labeled it as a motion for summary judgment. ***Id.***

¶8.     As in ***Rein***, we are presently faced with a situation in which the trial court improperly labeled its decision as one for dismissal under Rule 12(b)(6). Gulledge's response to the motion was accompanied by exhibits. These exhibits included a transcript of Shaw's deposition testimony, a copy of Alice's application, and a transcript of hearing proceedings. These exhibits appear in the record, and it is obvious that the trial judge considered these exhibits in making his ruling. Therefore, we hold that the motion was one for summary judgment under Rule 56.

¶9.     Accordingly, we will consider the trial court's ruling under the appropriate standard of review for the grant of summary judgment, which is the de novo standard. *See* ***Pre-Paid Legal Services, Inc. v. Battle***, 2004 WL 636292 (Miss. 2004). Under this well established standard, "the motion should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." ***Peden v. City of Gautier***, 870 So.2d 1185, 1187 (Miss. 2004). When we review

4

the grant or denial of summary judgment, we consider all evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. *Rein*, 865 So. 2d at 1142.

¶10.    The elements of a negligence action are well-settled in Mississippi. Under the negligence regime of tort law, a plaintiff must prove by a preponderance of the evidence (1) duty, (2) breach, (3) causation, and (4) injury. *Miss. Dep't of Transp. v. Cargile*, 847 So.2d 258, 262 (Miss. 2003). To recover, a plaintiff must prove causation in fact and proximate cause. *Jackson v. Swinney*, 244 Miss. 117, 123, 140 So.2d 555, 557 (1962).

¶11.    "Proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." *Delahoussaye v. Mary Mahoney's, Inc.*, 783 So.2d 666, 671 (Miss. 2001). We have observed that in order for a person to be liable for an act which causes injury, "the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom." *Mauney v. Gulf Ref. Co.*, 193 Miss. 421, 9 So.2d 780, 780-81 (1942). "[T]he 'inquiry is not whether the thing is to be foreseen or anticipated as one which will probably happen, but whether it is likely to happen, even though the likelihood may not be sufficient to amount to a comparative probability.'" *Rein*, 865 So. 2d at 1145 (quoting *Gulf Ref. Co. v. Williams*, 183 Miss. 723, 185 So. 234, 236 (1938)). Thus, under this Court's jurisprudence, foreseeability is an essential element of causation. *Delahoussaye*, 783 So.2d at 671.

¶12.    The fact that an injury rarely occurs, or has never happened, is insufficient to protect the actor from a finding of negligence. *Rein*, 865 So. 2d at 1145. If *some* injury is to be anticipated, this Court will find liability even if the *particular* injury could not be foreseen. *Id.* Shaw should have reasonably anticipated

5

some injury could occur as a result of her act. However, "[r]emote possibilities do not constitute negligence from the judicial standpoint." ***Ill. Cent. R. Co. v. Bloodworth***, 166 Miss. 602, 145 So. 333, 336 (1933). That is, we do not charge the actor with a "prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities." ***Mauney,*** 9 So.2d at 781. As we have concluded previously, "the law must say, as it does, that 'care or foresight as to the probable effect of an act is not to be weighed on jewelers scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations.'" ***Rein***, 865 So. 2d at 1144 (quoting ***Mauney***, 9 So. 2d at 781).

¶13.   With respect to the administration of oaths and affirmations, the Mississippi Code provides that

> [e]very notary public shall have the power of administering oaths and affirmations in all matters incident to his notarial office, and he shall be further qualified and empowered to administer oaths and affirmations for the purpose of taking oral testimony under oath or affirmation within the state at large. If an attestation of a notary public is questioned as to its authenticity or correctness of language, the notary public may file an affidavit regarding the truth of the attestation in question along with any corrected language and may file such with the land records in the office of the Chancery Clerk where such land is located, properly indexed, if such authenticity or correctness of language affects real property. Such affidavit shall be a rebuttable presumption that the attestation is true and correct.

Miss. Code Ann. § 25-33-9 (Rev. 2003). Moreover, concerning a notary's powers and duties, the Code states:

> Every notary public shall have power to receive the proof or acknowledgment of all instruments of writing relating to commerce or navigation, such as bills of sale, bottomries, mortgages, and hypothecations of ships, vessels or boats, charter parties of affreightment, letters of attorney, and such other writings as are commonly proved or acknowledged before notaries; and to perform all other duties required of notaries by commercial usage, and also to make declarations, including the filing of an affidavit as provided in Section 25-33-9, and certify the truth thereof, under his seal of office, concerning all matters done by him in virtue of his office.

*Id*. § 25-33-11.

6

¶14.    This Court has on three prior occasions considered the issue of a notary's liability concerning false certificates. In *United States Fidelity & Guaranty Co. v. State ex rel. Ward*, 211 Miss. 864, 53 So. 2d 11, 12 (1951), this Court first considered the proposition that a notary and its sureties are liable where the notary makes a false certificate and injury results therefrom. In *United States Fidelity*, this Court cited the general rule that

> In those jurisdictions in which a notary is required by statute to give a bond with sureties for the performance of his official duties, he and his sureties, will be liable to an action for any breach of the conditions of the bond, provided such breach is a proximate cause of a loss or injury, although it need not be the sole cause

*Id.* at 14 (quoting 66 C.J.S. *Notaries* § 12, at 628) . In *United States Fidelity*, the notary at issue Leona Lutes, wife of an attorney, Ralph Lutes, was actively involved in a land scheme concocted by Ralph Lutes involving a fictitious person and the fraudulent attempt to sell property to four different individuals including ultimately Rufus Ward and his wife. In connection with this scheme, Leona executed three false acknowledgments regarding deeds of trust. *Id.* This Court concluded that Leona's actions as a notary were the proximate cause of the damages alleged. *Id.* Moreover, the Court held that a notary and his or her surety may be held liable where the notary makes a false certificate acknowledging signatures as a part of the scheme to assist her husband in the fraudulent land transfers, because the plaintiffs relied upon her representation that the titles belonged to the persons whose signature they bore. *Id.* at 15. The Court more importantly concluded that a notary public would not be liable for negligent or wrongful acts which were not a proximate, or cause in fact, of the damages suffered. It is thus apparent that the specific loss must be proximately caused by the notary's negligent or wrongful act. *Id.*

¶15.    Next, in *Thomas v. State ex rel. Thorp Finance Corp.*, 251 Miss. 648, 171 So. 2d 303 (1965), this Court  also held a notary liable where the notary's act was the proximate cause and the

7

resulting damages were foreseeable. *Id.* at 306. Finally, in *King v. State ex rel. Murdock Acceptance Corp.*, 222 So. 2d 393 (Miss. 1969), this Court was again faced with the circumstances of a false certificate by a notary;. We found that the notary's liability was based upon the fact of reliance upon same by the creditor involved and that the notary's act of executing a false certificate was the proximate cause of the loss. *Id.* at 396.

¶16. Under our established precedent, we find that there exists a genuine issue of material fact with respect to Shaw's liability in this case[2]. Accordingly, the trial court erred in summarily dismissing the case against Deborah Shaw. In addition, we find that there is a genuine issue of material fact regarding the unknown surety's liability in this case. As such, the court below erred in granting summary judgment in favor of the unknown surety.

## II. Liability of the Bank.

¶17. Gulledge correctly notes the following general rule:

> The doctrine of respondent superior has its basis in the fact that the employer has the right to supervise and direct the performance of the work by his employee in all its details, and this right carries with it the correlative obligation to see to it that no torts shall be committed by the employe [sic] in the course of the performance of the character of work which the employe [sic] was appointed to do.

*White's Lumber & Supply Co. v. Collins*, 186 Miss. 659, 191 So. 105 (1939). As Gulledge points out, under the respondent superior doctrine, "one who acts through another is in law himself the actor." *Fruchter v. Lynch Oil Co.*, 522 So.2d 195, 199 (Miss. 1988). That is, "[i]f B while acting on A's behalf commits a tort, A may be liable." *Id.*

---

[2]Out of an abundance of caution, we acknowledge the obvious - Shaw's actions were not a proximate cause of Charlene Gulledge's death. However, that is not the issue - the issue is whether Shaw's actions in notarizing the forged signature was a proximate result of Sonny's dismissal in the case sub judice, thus resulting in the plaintiff's inability to collect on the judgment from Sonny.

¶18. However, where an employee is not acting in the furtherance of her employer's interests, the employer is not liable for her torts:

> The inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it,--whether in doing the act he uses the appliances of the master,--*but whether, from the nature of the act itself as actually done, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account*

*Holliday v. Pizza Inn, Inc.*, 659 So.2d 860, 864 (Miss. 1995) (quoting *Canton Cotton Warehouse Co. v. Pool*, 78 Miss. 147, 28 So. 823 (1900) (emphasis added). Moreover,

> In determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, *but, was he at the time doing any act in furtherance of his masters' business*? If a servant, having completed his duty to his master, then proceeds to prosecute *some private purpose of his own*, the master is not liable; but if the servant, while engaged about his master's business, merely deviates from the direct line of duty to accomplish some personal end, the master's responsibility may be suspended, but it is re-established when the servant resumes his duty.

*Holliday*, 659 So. 2d at 864-65 (quoting *Barmore v. Vicksburg, S. & P. Ry.*, 85 Miss. 426, 38 So. 210 (1905) (emphasis added)).

¶19. The record indicates that Shaw knew Sonny, Marjorie, and Alice. She worked with Sonny at the Bank. She was not the only notary available at the Bank on the day in question. Moreover, Shaw never charged a Alice or Marjorie a fee for her services as a notary. This was the only occasion on which Shaw had notarized the signature of a person who did not appear before her when signing a document.

¶20. While we have already unequivocally found that Shaw's job responsibilities at the Bank included her notary public duties, we find from the record before us, and for the foregoing reasons, that Shaw's act of notarizing a forged document was not in the furtherance of the Bank's business - rather, it was a personal act. When Shaw notarized the application, she ceased to be an actor on the Bank's behalf and instead

9

became a private actor seeking to accomplish her own private purpose. Accordingly, there is no genuine issue of material fact with respect to whether the Bank may be held liable for any of Gulledge's claims under the doctrine of respondeat superior. *See* **Holliday**, 659 So. 2d at 864.

¶21. Finally, we note that Gulledge's claim against the Bank for negligent supervision is not considered here because that issue is not discussed in Gulledge's brief, aside from the conclusory statement that the Bank "is liable to the Appellants for the negligent supervision of Deborah Shaw." It is well settled that this Court will not consider assertions which are unsupported by authority. *Entergy Miss., Inc. v. Bolden*, 854 So.2d 1051, 1057 (Miss. 2003) (citing *Dowdle Butane Gas Co. v. Moore*, 831 So.2d 1124, 1136 (Miss. 2002)). The trial court did not err in summarily dismissing the case against the Bank.

## CONCLUSION

¶22. For the foregoing reasons, we find that the trial court did not err in granting summary judgment in favor of the Bank. However, we find that the trial court erred in granting summary judgment in favor of Deborah Shaw and the unknown surety.

¶23. Therefore, we affirm the circuit court's judgment to the extent that it granted summary judgment in favor of Merchants and Farmers Bank. We reverse the circuit court's judgment to the extent that summarily dismissed the complaint against Deborah Shaw and the unknown surety, and we remand this case for further proceedings consistent with this opinion.

¶24. **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

**WALLER, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., AND DIAZ, J., NOT PARTICIPATING.**