# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CA-01734-SCT

***DAVID SIMPSON***

***v.***

***CITY OF PICKENS, MISSISSIPPI AND WILLIAM BLACKSTOCK, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER OF THE CITY OF PICKENS, MISSISSIPPI***

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/1998 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JESSIE L. EVANS |
| | WESLEY THOMAS EVANS |
| ATTORNEYS FOR APPELLEES: | BYRON HANSBRO |
| | JOHN D. BRADY |
| | JOHN CURTIS HALL, II |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 06/01/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/22/2000 |

## BEFORE PITTMAN AND BANKS, P.JJ., AND COBB, J.

## COBB, JUSTICE, FOR THE COURT:

## STATEMENT OF THE CASE

¶1. David Simpson brought suit against the City of Pickens and William Blackstock, individually and in his official capacity as a police officer for the City, pursuant to the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-1 et seq. (Supp. 1999). Simpson acknowledged that Blackstock was acting in the course and scope of his employment, but claimed that Blackstock acted in reckless disregard of the safety and well-being of persons not engaged in criminal activity at the time of injury, thus negating the exemption from liability provided under § 11-46-9(1)(c).[(1)] Simpson also demanded a trial by jury. The case was tried in a bench trial in the Holmes County Circuit Court where the court found for the City of Pickens and Blackstock. On appeal to this Court, Simpson raised two issues:

**I. THE LOWER COURT USED AN INCORRECT LEGAL ANALYSIS AND STANDARD IN RENDERING A JUDGMENT IN FAVOR OF THE APPELLEE.**

**II. THE MISSISSIPPI TORT CLAIMS ACT DID NOT BAR APPELLANT'S RIGHT TO**

**A JURY TRIAL**

¶2. We find no error with regard to the jury trial issue. However, we reverse and remand to the trial court for application of the "preponderance of evidence" standard of proof which we today adopt for use in construing the provisions of Miss. Code Ann. § 11-46-9(1)(c).

## STATEMENT OF THE FACTS

¶3. Simpson's complaint alleged that on the night of March 24, 1996, William Blackstock, a law enforcement officer employed by the City of Pickens, came to Simpson's home, kicked in the front door, pulled a gun in front of Simpson's children and arrested him, although he had committed no crime. Simpson alleged that Blackstock uttered racial slurs and falsely charged him with aggravated assault. The complaint, which sought actual and punitive damages, also asserted that "the wilful, intentional, wanton, and reckless assault" against Simpson and the wrongful arrest, false imprisonment, and unlawful arrest and detention were a result of Blackstock's negligent acts.

¶4. The City of Pickens and Blackstock filed separate answers and defenses, denying all of Simpson's allegations and claiming, inter alia, immunity under the MTCA, as well as denying that Simpson was entitled to a jury trial.

¶5. During the trial, Blackstock testified that while patrolling the City of Pickens, he saw Medford Greer pull around a car, driven by Simpson, which was sitting at a stop sign. Blackstock followed Greer and stopped him because he appeared to run the stop sign when he pulled around Simpson. At that time, Greer said: "Well, that guy was just sitting there at the stop light; wouldn't even move. Something is wrong with him." When Blackstock went back and began following Simpson, he saw Simpson weave and tried to pull him over by use of blue lights and intermittently, his siren. Simpson did not cooperate. Blackstock continued to follow Simpson, who stopped at several stop signs and each time, when Blackstock would get out of his car to approach the vehicle, Simpson would drive away. Simpson finally stopped in the driveway of his home, but even there he would not obey Blackstock's order to stop walking toward the house and talk with him. According to Blackstock, an altercation occurred, and after a chase around the yard and over fences, Simpson made it into his home. Blackstock then kicked in Simpson's front door to gain entry into the home. Blackstock called for backup when Simpson refused to go outside with him. Officer Beasley arrived and Simpson was arrested and taken to the Pickens police station. Beasley testified that Simpson had a "strong odor of alcohol about his breath or some kind of foreign substance smell", and that Simpson made an aggressive move toward Blackstock while he was handcuffed in the police department. Blackstock testified that while he was taking Simpson to the Attala County jail, Simpson became combative and broke the plexiglass window in the patrol car. Blackstock charged Simpson with driving under the influence of any other substance which impaired such person's ability to operate a motor vehicle, malicious mischief, resisting arrest 2nd offense, disorderly conduct 2nd offense and aggravated assault. Simpson was jailed for about two weeks on these charges before being released on a reduced bond. As of the date of trial, Simpson had not been prosecuted for any of the charges.

¶6. Simpson's account of the evening's events was completely different. He testified that after he finished working that night he drove home, then he walked to his sister-in-law's house to get some movies and then walked back home around 11:50 p.m. He further testified that he was inside his home, playing with his dog, when he noticed a police car out in the front of his house. He said that Blackstock knocked on his door and accused him of running a stop sign. Simpson stated that he closed the door and went to wake his girlfriend

when Blackstock broke the door open and entered his house. Simpson denied having an altercation with Blackstock and denied the chase and jumping over fences. He testified that he told Blackstock that he would not go with him unless he called for backup. Simpson did allow the backup officer to take him into custody, but refused to take a breathalyzer test and was transported to several jails before an empty cell was found in the Attala County jail. Simpson also alleged that Blackstock's actions were retaliatory because Simpson, just one week prior, had settled another case in which he had filed charges in the United States District Court against the City of Pickens for use of excessive force. Simpson had executed a release, allowed the case to be dismissed with prejudice, and, in exchange, received a confidential settlement from the Mississippi Municipal Liability Association, insurer for the City of Pickens.

¶7. At the bench trial four witnesses testified: Simpson and his live-in girlfriend, and officers Blackstock and Beasley. At the close of all testimony, the trial judge found for the City of Pickens and for Blackstock, stating:

> Section 11-46-9(c) [sic] states in relevant part: that a governmental entity and its employee acting within the course and scope of their employment or duties shall not be liable for any claim arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police . . . unless the employees acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

> The plaintiff has the burden of proof and therefore must prove by clear and convincing evidence whether this case involves a governmental entity and an employee of the entity and; whether the employee was acting within the course and scope of his employment or duties. Further, Plaintiff must prove that his claim arose out of an act or omission of the entity and or the employee engaged in the performance or execution of duties or activities; and that the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of Plaintiff's injury.

> The evidence is clear that the City of Pickens is a governmental entity, that William Blackstock was employed as a police officer for the City of Pickens, and was on duty at the time of this incident. The evidence further shows that Officer Blackstock was engaged in duties relating to his employment as a police officer.

> The question now before the Court is whether the Plaintiff has proven that Officer Blackstock acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury. The Plaintiff has filed this suit on his behalf, although, there was [sic] other persons inside the house; however, the evidence is clear that the other persons in the house were not engaged in criminal activity and that the officer left the house without an altercation inside the house.

> As to whether or not the Plaintiff was engaged in criminal activity at the time of this incident the Court finds the Plaintiff has not carried his burden of proof by clear and convincing evidence that he was not engaged in criminal activity at the time of this incident.

> This Court finds that the Plaintiff's evidence did not rise to the level of clear and convincing evidence required to meet the Plaintiff's burden of proof. This Court therefore finds for the City of Pickens and William Blackstock in this matter.

(emphasis added).

## ANALYSIS

### ISSUE I. DID THE LOWER COURT USE AN INCORRECT LEGAL ANALYSIS AND STANDARD IN RENDERING A JUDGMENT IN FAVOR OF THE APPELLEE?

¶8. The MTCA provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit. Miss. Code Ann. § 11-46-7(1) (Supp.1999). Governmental entities and employees are provided an exemption from liability in § 11-46-9. Subsection (1)(c) provides in pertinent part:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection **unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;**

Miss. Code Ann. § 11-46-9(1)(c) (Supp. 1999) (emphasis added).

¶9. It was undisputed that the City of Pickens is a governmental entity, that William Blackstock was employed as a police officer for the City of Pickens and was on duty at the time of this incident, and he was engaged in duties relating to his employment as a police officer. However, there was significant dispute as to what actually happened on the night in question.

¶10. Simpson had the burden of proving that he was injured at the time Blackstock acted in reckless disregard of Simpson's safety and well being and while Simpson was not engaged in criminal activity. The trial judge applied the "clear and convincing" standard and ruled that Simpson did not meet his burden of proof. Simpson argued that the proper standard of proof should be "preponderance of the evidence" based on the general standard applied in negligence actions. The City and Blackstock conceded that preponderance of the evidence would be the correct standard, but argued that the court's application of the higher standard was harmless error because Simpson's proof failed to meet even the lower preponderance of evidence standard.

¶11. The MTCA is silent regarding the standard of proof to be applied to a claim made pursuant to the provisions of Miss. Code Ann. § 11-46-9(1)(c). In *Turner v. City of Ruleville*, 735 So.2d 226, 230 (Miss. 1999), this Court discussed the application of § 11-46-9(1)(c), and specifically addressed the meaning of "reckless disregard", but there was no question raised about which standard of proof to apply. It should be noted that we held in *Turner* that "reckless disregard is a higher standard than gross negligence by which to judge the conduct of officers" and "reckless disregard for the safety of others is synonymous with willfulness and wantonness." *Id.*

¶12. Today we adopt the preponderance of evidence standard of proof to be applied in § 11-46-9(1)(c) cases. We hold that a governmental agency and its employees acting within the course and scope of their employment or duties shall not be liable for any claim arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire

protection unless it is proved by a preponderance of the evidence that the employee acted in reckless disregard of the safety and well-being of any person (claimant) not engaged in criminal activity at the time of injury.

¶13. Because the trial judge did not know to apply this standard, we reverse and remand in order to allow her to determine whether Simpson proved by a preponderance of the evidence that officer Blackstock acted in reckless disregard to the safety and well-being of Simpson, at the time of injury suffered by Simpson, when Simpson was not engaged in a criminal activity.

¶14. This is basically a case of one party's word against the other; and therefore, the trial judge is in a much better position than this Court to determine whether the evidence presented meets the requisite burden of proof. She saw these witnesses testify. Not only did she have the benefit of their words, she alone among the judiciary observed their manner and demeanor. She was there on the scene. She smelled the smoke of battle. She sensed the interpersonal dynamics between the lawyers, the witnesses, and herself. These are indispensable. See *Rochell v. State,* 748 So.2d 103, 110 (Miss. 1999) (citing **Madden v. Rhodes,** 626 So.2d 608, 625 (Miss. 1993)).

### ISSUE II. DOES THE MISSISSIPPI TORT CLAIMS ACT BAR APPELLANT'S RIGHT TO A JURY TRIAL?

¶15. Miss. Code Ann. § 11-46-13 (Supp. 1999) provides in pertinent part:

> (1) Jurisdiction for any suit filed under the provisions of this chapter shall be in the court having original or concurrent jurisdiction over a cause of action upon which the claim is based. **The judge of the appropriate court shall hear and determine, without a jury**, any suit filed under the provisions of this chapter. Appeals may be taken in the manner provided by law.

(emphasis added).

¶16. This Court has held that "the right to a jury trial guaranteed by § 31 of the Mississippi Constitution applies only to those cases in which a jury trial was necessary at common law" and that "suits against the State of Mississippi or a school district are not 'suits at common law'. When the State does waive sovereign immunity, it may attach any conditions to its consent, such as a provision excluding trial by jury." *Wells v. Panola County Bd. of Educ.*, 645 So. 2d 883, 898 (Miss. 1994).

¶17. The trial judge was not in error in denying Simpson a jury trial. This issue is without merit.

### CONCLUSION

¶18. Because we today adopt the "preponderance of evidence" standard of proof to be applied to the MTCA provisions central to this case, and because Simpson's case was tried without notice of the appropriate standard, we reverse the judgment of the Holmes County Circuit Court and remand for further action consistent with this opinion.

¶19. **REVERSED AND REMANDED.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., MILLS, WALLER AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH**

**SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶20. While I agree with the majority's reversing and remanding this case for a new trial and adopting the "preponderance of the evidence" standard of proof to be applied in cases brought under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Supp. 1999), I must dissent from its refusal to allow David Simpson ("Simpson") a trial by jury. There is no justification for requiring a bench trial in such cases. Such a decision is an indictment of the jury system and a clear violation of the right to a trial by jury guaranteed by our state's constitution. Accordingly, I concur in part and dissent in part.

¶21. Simpson requested a jury trial both in his complaint and at trial. The complaint was brought under Miss. Code Ann. § 11-46-9(c) and charged Officer William Blackstock with acting in reckless disregard of the safety and well-being of someone not engaged in a criminal activity at the time of injury. The trial court denied Simpson's request for a jury trial on the basis of the Act's provision, which directs that cases brought under the Act be tried without a jury. Id. § 11-46-13(1). The Legislature and this Court have taken away a citizen's right to trial in violation of the Mississippi Constitution Art. 3, Section 31 which provides, in pertinent part, that "the right to trial by jury shall remain inviolate. . ." *See also* Miss. R. Civ. P. 38(a)[(2)].

¶22. Under applicable federal law, non-jury trials are provided in actions under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. The rationale behind non-jury trials is saving the government money. The inherent fear that juries will award higher verdicts when faced with the deep-pocketed governmental entities has kept the cases in the hands of judges. Apparently, the State of Mississippi has the same concerns since the Legislature put clear safeguards in the Act. *See also **Vortice v. Fordice***, 711 So.2d 894, 896 (Miss. 1998)(Court found that the desire to protect the coffers of the state is a legitimate basis for upholding the constitutionality of the Act). These safeguards include requiring timely notices to the public entities (§ 11-46-11 (1)), limiting the amount of recovery (§ 11-46-15), and allowing for a 90-day period of investigation and settlement (§ 11-46-11(1)).

¶23. There is even a provision in the Act which allows for a reduction of the "verdict" if it exceeds the monetary limits set by the Legislature. See Miss. Code Ann. § 11-46-15(3). This is yet another safeguard to protect the treasuries of governmental entities. How could this provision apply to a non-jury trial? Under that rationale, the Legislature assumed that a judge would not know the law and erroneously exceed the damage limitations. If that were to happen, who would reduce the judge's verdict? This provision appears to require two actors, the jury who hears the case and returns a verdict and the judge who has the authority to reduce the verdict[(3)] if it exceeds the damages limitation set by the Legislature.

¶24. While the majority is correct in adopting a preponderance of the evidence standard of proof for claims arising under the Act, it errs in not allowing Simpson a trial by jury. The Constitution of our state, and not the Act, should govern whether a litigant in a negligence action should be provided a jury trial. In addition, the Legislature has provided enough safeguards in order to protect against a runaway jury, without this Court taking it a step further and doing away with juries and relying instead on the State's judges to protect the public coffers. This case should be reversed and remanded for a full trial, this time by a jury of Simpson's peers. Accordingly, I concur in part and dissent in part.

1. Although he also alleged in his complaint that Blackstock committed criminal acts, Simpson did not raise on appeal the issue of immunity of either the City or Blackstock pursuant to Miss. Code Ann. §§ 11-46-

5(2) & (3) or 11-46-7(2) & (7).

2. Miss. R. Civ. P. 38 (a) states: "The right of trial by jury as declared by the Constitution or any statute of the State of Mississippi shall be preserved to the parties inviolate." The purpose of Rule 38 is to guarantee to litigants their right to a trial by jury as declared by § 31 of the Mississippi Constitution, while simultaneously providing for more flexibility in the uses of juries. Miss. R. Civ. P. 38 cmt.

3. Miss. Code Ann. § 11-46-15(3) states in pertinent part: "the **court** shall reduce the verdict accordingly and enter judgment in an amount not to exceed the maximum dollar amount of liability provided in subsection (1) of this section." (emphasis added).