# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01439-SCT

*BERNITA DAVIS, ADMINISTRATRIX OF THE*
*ESTATE OF ANNIE M. JOHNSON, DECEASED*

*v.*

*CITY OF CLARKSDALE, MISSISSIPPI, A*
*MUNICIPAL CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2008 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANA J. SWAN |
| ATTORNEY FOR APPELLEE: | CURTIS D. BOSCHERT |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 09/17/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Bernita Davis, Administratrix of the Estate of Annie M. Johnson, filed a wrongful-death suit in the Coahoma County Circuit Court against the City of Clarksdale and Coahoma County.  After Coahoma County was dismissed, the circuit court granted summary judgment for the City.  Aggrieved, Davis now appeals.  Finding no error, we affirm.

## FACTS

¶2.     On August 24, 1995, at approximately 5:15 a.m., the City of Clarksdale's local 911 service received a "hang-up" call from a telephone number located at 246 Yazoo Avenue.

This was the address for a store owned and operated by Annie Mae Johnson. Johnson also occasionally resided at the premises. Tina Billups, a friend of Johnson's, said that she had spoken with Johnson by phone earlier that morning. According to Billups, their conversation ended when Johnson said that she had to hang up and call the police.

¶3.     Upon receiving the hang-up call, the 911 operator attempted a return call, but the line was busy. The Clarksdale Police Department received notification of the 911 call at 5:18 a.m.[1] Officer Alfonzo Maddox was immediately dispatched to the address and arrived on the scene at 5:19 a.m. From his vehicle, Officer Maddox shined a spotlight onto the front of the building. He noticed nothing unusual and checked the rest of the buildings on the block in the same manner. He then returned and shined his spotlight onto Johnson's store a second time. Once again, he observed nothing unusual. Officer Maddox was called to another location at approximately 5:21 a.m.[2]

¶4.     At 5:48 a.m., two other Clarksdale police officers were patrolling the area when they saw broken glass in the entrance of Johnson's store. The officers entered the building and found Johnson lying dead on the floor. The following day, Peter Earl Black was arrested and confessed to Johnson's murder. Black was convicted of murder, and is currently serving a life sentence without the possibility of parole.

---

[1] Officer Tim Fortenberry stated that the 911 call center's time usually differs from the police station's time by one or two minutes.

[2] Other individuals who were in the vicnity at approximately 5:30 a.m. said that, like Officer Maddox, they had noticed nothing unusual.

¶5. On August 22, 1996, Davis, on behalf of Johnson's estate and her beneficiaries, filed a wrongful-death action against the City of Clarksdale and Coahoma County. Davis alleged that Officer Maddox's failure to properly investigate the 911 call constituted reckless conduct, and was a direct and proximate cause of Johnson's death. Shortly thereafter, Davis dismissed Coahoma County as a party to the suit. On December 23, 1996, Davis filed an amended complaint, adding Northwest Mississippi Regional Medical Center ("NMRMC"), which operated and controlled the City's 911 emergency service, as a named party. NMRMC was dismissed from the suit per agreed order on May 21, 2008.

¶6. On January 9, 2008, the City filed a motion to dismiss on the ground that Davis could not show that the City or its employees had acted with reckless disregard. On July 28, 2008, the trial court dismissed Davis's suit with prejudice. The trial court found no substantial, credible evidence that Officer Maddox had acted with reckless disregard during his investigation of the 911 call.

¶7. Davis now appeals, arguing that the trial court erred in dismissing her suit because a factual question remains as to whether Officer Maddox acted with reckless disregard.

## DISCUSSION

**Whether the circuit court erred in finding no genuine issue of material fact that Officer Maddox acted with reckless disregard.**

¶8. Where a trial judge considers matters outside the pleadings, a motion to dismiss is considered a motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure. *Gulledge v. Shaw*, 880 So. 2d 288, 292 (Miss. 2004) (citing *Rein v. Benchmark*

3

*Constr. Co.*, 865 So. 2d 1134, 1142 (Miss. 2004)). The City's motion to dismiss was accompanied by a memorandum in support. Various exhibits were attached to this memorandum, including depositions, police reports, and Davis's response to interrogatories. In response to the City's motion to dismiss, Davis likewise attached transcripts of deposition testimony from two Clarksdale police officers. All of these exhibits are in the record, and the trial judge necessarily considered these exhibits in making his ruling. Therefore, we construe the City's motion as one for summary judgment under Rule 56. *See Shaw*, 880 So. 2d at 292.

¶9. Grants of summary judgment are subject to a de novo standard of review. ***Grange Mut. Cas. Co. v. U.S. Fid. & Guar. Co.***, 853 So. 2d 1187, 1190 (Miss. 2003). "The facts are viewed in [a] light most favorable to the nonmoving party." ***Id.*** Summary judgment is precluded if a genuine issue of material fact exists. ***Id.*** The nonmoving party "must set forth specific facts showing that there exists genuine issues for trial." ***Id.***

¶10. The Mississippi Tort Claims Act ("MTCA"), with certain exceptions, makes governmental entities immune from liability for tortious acts and omissions committed by employees acting within the course and scope of their employment. ***Phillips v. Miss. Dep't of Pub. Safety***, 978 So. 2d 656, 660 (Miss. 2008). Under the MTCA, a governmental entity is not liable for injuries caused by actions of its police officers unless the officers acted with "reckless disregard of the safety and well-being" of innocent persons. Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2002). The plaintiff bears the burden to show, by a preponderance of the

evidence, that the officers acted with reckless disregard. *Phillips*, 978 So. 2d at 661 (citing *Simpson v. City of Pickens*, 761 So. 2d 855, 859 (Miss. 2000)).

¶11.   Reckless disregard is "a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Phillips*, 978 So. 2d at 661 (citing *City of Greenville v. Jones*, 925 So. 2d 106, 110 (Miss. 2006)).   It "usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 995 (Miss. 2003) (quoting *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999)).   It is "more than mere negligence, but less than an intentional act." *Durn*, 861 So. 2d at 994 (citing *City of Jackson v. Brister*, 838 So. 2d 274, 281 (Miss. 2003)).   This Court considers the totality of the circumstances in determining whether someone's conduct constituted reckless disregard. *Phillips*, 978 So. 2d at 661 (citing *City of Ellisville v. Richardson*, 913 So. 2d 973, 978-979 (Miss. 2005)). An officer's actions must be judged objectively, considering all the factors confronting the officer. *Phillips*, 978 So. 2d at 661 (quoting *City of Jackson v. Powell*, 917 So. 2d 59, 72 (Miss. 2005)).

¶12.   Davis argues that Officer Maddox acted in reckless disregard of Johnson's safety and well-being by failing to properly investigate the 911 call.  Davis specifically points to the fact that Officer Maddox did not get out of his car and knock on the door, or perform any further investigation.  She cites two cases for support.  Neither of these cases, however, concern a police officer's investigation of a 911 call.

5

¶13. In *Maye v. Pearl River County*, 758 So. 2d 391 (Miss. 1999), a deputy speedily backed out of a driveway and slammed into another vehicle. *Maye*, 758 So. 2d at 392. This Court found that the deputy had acted with reckless disregard. *Id.* at 395. The evidence showed that the deputy could not see what was behind him as he was backing up, and that he had failed to respond when the driver of the other car began honking while the deputy was still forty feet away. *Id.* The severity of the plaintiff's injuries, along with the amount of damage done to the vehicle, showed that the deputy had backed up too fast. *Id.*

¶14. We find *Maye* distinguishable. Unlike the case before us, *Maye* does not concern an allegedly improper or insufficient investigation.

¶15. The other case Davis cites is *Foster v. Noel*, 715 So. 2d 174 (Miss. 1998). In *Foster,* this Court affirmed the trial court's finding that a police officer had acted with reckless disregard by placing a female's name on an affidavit for an arrest warrant, despite being informed that the perpetrators were male. *Foster*, 715 So. 2d at 179. The officer put the female's name on the arrest warrant because she was the owner of the vehicle in which the perpetrators had escaped. *Id.* at 176. The officer admitted that he had not followed protocol in failing to investigate whether the owner of the vehicle was the actual perpetrator of the crime. *Id.* at 177.

¶16. Unlike the officer in *Foster*, Officer Maddox did not ignore pertinent information or fail to follow standard procedure. In their depositions, Officers John Rybolt and Tim Fortenberry each stated that 911 hang-up calls occur frequently, and often there is "nothing to" such calls. Officer Fortenberry further stated that there was no specific procedure for

6

investigating 911 hang-up calls, and that he would not have done anything differently than Officer Maddox.

¶17.    Even assuming that Officer Maddox's investigation was inadequate, his behavior was, at most, simple negligence.  Inadequate or careless investigations have been considered negligence rather than reckless disregard. *City of Greenville v. Jones*, 925 So. 2d 106, 118-119 (Miss. 2006). In *Jones*, police officers mistakenly identified and arrested an individual for making a series of bomb threats. *Id.* at 107-08.  The officers received a report from a cellular service company that identified the caller. *Id.* at 108.  The report, however, was incorrect due to a mistake by the cellular service company. *Id.*  After being falsely accused of making the bomb threats, the caller and his wife sued the City of Greenville. *Id.*  The trial court found in favor of the plaintiffs, but this Court reversed and rendered judgment for the City of Greenville. *Id.* at 121.  Although a careful examination of the report would have revealed a discrepancy between the plaintiffs' phone number and the number from which the bomb threats had originated, this "might, arguendo, rise to the level of negligence, but certainly . . . fall[s] well short of conduct which could be described as reckless disregard." *Id.* at 118-119.

¶18.    In *Collins v. Tallahatchie County*, 876 So. 2d 284, 288 (Miss. 2004), this Court upheld summary judgment for the County where the plaintiff alleged that inadequate police work had led to her injury. *Collins*, 876 So. 2d 284.  The plaintiff, Collins, informed the Tallahatchie County Sheriff's Department ("TCSD") about threatening phone calls she had received from her estranged husband. *Id.* at 286.  The TCSD instructed Collins to file an

7

affidavit at the justice clerk's office so that an arrest warrant could be issued. *Id.* Collins did so, and an arrest warrant was signed by a judge. *Id.* The arrest warrant, however, was never delivered to the TCSD. *Id.* Days later, Collins's husband forced his way into her home and shot her twice. *Id.* Collins brought suit against the County, claiming that it was liable for failing to effectuate her husband's arrest. *Id.* at 287. This Court affirmed summary judgment for the County. *Id.* at 287-90. The Court held that, even though there was "ample probable cause to arrest," TCSD's conduct did not rise to the level of reckless disregard. *Id.* at 288.

¶19. We find no facts to support that Officer Maddox acted with reckless disregard.

## CONCLUSION

¶20. Because we find that there is no genuine issue of material fact that Officer Maddox acted with reckless disregard, we affirm the trial court's dismissal of the case.

¶21. **AFFIRMED.**

**CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶22. Whether Officer Maddox's actions, or the lack thereof, amounted to reckless disregard for the safety and well being of Annie Mae Johnson was a genuine issue of material fact that required a denial of the City of Clarksdale's pretrial motion to dismiss. Plaintiffs presented evidence that created a question as to whether the perpetrator, Black, already had shattered the front door and was inside the building when Officer Maddox arrived.

8

¶23. As the majority recounts, Johnson was on the telephone with her friend, Tina Billups, when Johnson apparently heard or saw something that prompted her to terminate that call and telephone the police. After her 911 call was disconnected, for reasons unknown, the dispatcher attempted to call back, got a busy signal, and was unable to reestablish telephone contact with Johnson.

¶24. Once inside the building from which Ms. Johnson had called, Clarksdale police officers noticed that a telephone had been torn from the wall, was covered with blood and was lying next to her dead body. The abrupt and unexplained disconnect, followed by a busy signal, plus the disabled and blood-covered telephone, constitute rather dramatic and compelling circumstantial evidence that Black already had broken into the building, and that once inside, he had ripped the telephone from the wall before taking this unfortunate woman's life.

¶25. Furthermore, Officer Fortenberry testified that Black had entered and exited the building through the shattered front door. Thus, if Black's forced entry and presence in the building prompted the decedent's 911 call, the front door glass would have been shattered when Officer Maddox arrived, and even a modestly diligent inspection would have revealed the door's condition to him. Officer Maddox claims that he shined a spotlight on the building twice and that nothing appeared unusual; soon thereafter, however, two patrolling officers, who had not gone there in connection with Johnson's 911 call, readily noticed the shattered front door.

9

¶26. This powerful nucleus of evidence was more than sufficient to require denial of Clarksdale's motion to dismiss. While respecting the majority's contrary view, I would reverse and remand for a trial on the merits.

**GRAVES, P.J., JOINS THIS OPINION.**