# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01246-COA

**MISSISSIPPI BUREAU OF NARCOTICS**                      **APPELLANT**

**v.**

**HENRY HUNTER AND RITA HUNTER**                      **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2019 |
| TRIAL JUDGE: | HON. TONI DEMETRESSE TERRETT |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK D. MORRISON |
| ATTORNEY FOR APPELLEES: | MARSHALL E. SANDERS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 8/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. On April 24, 2015, the City of Vicksburg Police Department (hereinafter referred to as "VPD") and the Mississippi Bureau of Narcotics (hereinafter referred to as "Bureau") executed a "no knock" search warrant on the wrong house during a joint-narcotics operation. The task force was attempting to serve a "no knock warrant" on an individual who resided at 525 Feld Street in Vicksburg, Mississippi, but instead put 523 Feld Street on the warrant and went into the wrong house. The wrong house belonged to Henry Hunter and Rita Hunter, who were present at the time of the early morning "no knock" entry. Law enforcement initially detained the Hunters but released them when they realized the error. Before entry on the Hunter's home, an officer with the VPD told the task force agents they

were about to enter the wrong house, but the agents proceeded anyway.

¶2. The Hunters filed suit against the VPD and the Bureau, claiming that the Defendants negligently entered their home and illegally arrested them. The Hunters further claimed that they sustained mental and physical damage as a result. Both the VPD and the Bureau filed motions for summary judgment. The trial court granted summary judgment in favor of the VPD but denied the Bureau's two motions for summary judgment, finding that a genuine issue of material fact existed as to whether the Bureau acted in reckless disregard under Mississippi Code Annotated section 11-46-9(1)(c) (Rev. 2012) of the Mississippi Tort Claims Act (hereinafter referred to as "MTCA"). Following a bench trial, the trial court ruled that the Bureau acted in reckless disregard and awarded the Hunters $50,000 in damages. The Bureau appealed. Finding no error, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶3. In April 2014, the Bureau initiated "Operation Long Time Coming II," a task force intended to dismantle an organization that was moving large quantities of illegal drugs through Warren County, Mississippi. The task force included officers from both the Bureau and the VPD. Bureau Officer Norman Harris was the primary case agent of the task force, with assistance from Bureau Officer Robert Whitten. VPD Lieutenant Troy Kimble, the assistance chief of investigations, served as the VPD's lead officer on the task force.

¶4. The operation involved many targets and several areas of Warren County that were known for drug activity. For over six months, the Bureau used confidential informants to buy crack cocaine, powder cocaine, and marijuana from numerous individuals, including an

individual who lived at 525 Feld Street in Vicksburg, Mississippi. In April 2015, Bureau Officers Harris and Whitten appeared before a Warren County Justice Court judge and presented a search warrant application for the home at 525 Feld Street. However, the warrant application incorrectly listed the address to be searched as 523 Feld Street, which the Hunters occupied and owned. The judge ultimately issued a "no knock" warrant for the Hunters' home at 523 Feld Street instead of the home at 525 Feld Street.

¶5.     On April 24, 2015, at approximately 5 a.m., Bureau agents and VPD agents met at Sherman Avenue Elementary School in Vicksburg for a general briefing. Bureau Agent Evan Storr was the team leader for executing the warrant. As the officers approached the residence, VPD Officer Kimble realized the mistaken address and informed Bureau Officer Storr that the targeted individual did not live at 523 Feld Street. Nevertheless, Bureau Officer Storr proceeded with the "no knock" warrant because 523 Feld Street was the address listed on the search warrant.

¶6.     Just prior to the team's execution of the warrant, Rita was in her nightgown drinking coffee and watching the news. When she heard what sounded like someone opening the screen door at the front of their house, she notified Henry. Henry, who was not fully dressed, proceeded to open the front door but quickly stopped at Rita's request. As he went to the bedroom to retrieve his firearm, law enforcement officers used a battering ram to open the door, which flew off the hinges. The officers had their weapons drawn and commanded the Hunters to "get down, get down." Rita immediately complied and started to pray. Henry complied after Rita begged him to get on the floor. When the officers asked the Hunters for

3

the targeted individual's whereabouts, the Hunters responded that he did not live there. The officers allowed Henry and Rita to get off the floor approximately five minutes later.

¶7.   At that point, VPD Officer Kimble directed the officers to 525 Feld Street. The Officers knocked on that door and spoke with the mother of the individual they were investigating. That individual was not present at the time but was later apprehended in another location.

¶8.   Following the incident, Rita drove Henry to the emergency room because his heart was racing. He previously had a stent put in his heart. The medical visit cost the Hunters approximately $2,850. The damage to their door totaled approximately $350.

¶9.   On April 22, 2016, the Hunters filed a complaint against the Bureau and the VPD for the illegal entry into their home and the events that occurred as a result. Both the Bureau and the VPD filed an answer and raised the MTCA as a defense.

¶10.   On November 11, 2016, the Bureau filed a motion for summary judgment after the Hunters failed to respond to the Bureau's requests for admissions. On November 17, 2016, the VPD filed a motion for summary judgment, claiming immunity under the MTCA. On November 22, 2016, the Hunters filed a response to the Bureau's motion, which included a motion to withdraw and amend their deemed admissions. The Hunters explained that they thought they had already filed responses and requested that the court excuse the twelve-day delay. On March 23, 2018, the Bureau filed a "supplemental motion" for summary judgment, also claiming immunity under the MTCA.

¶11.   Following a hearing, the trial court granted the VPD's motion for summary judgment

4

and denied the Bureau's motions for summary judgment on both grounds. As a result, the trial court allowed the Hunters to withdraw and amend their deemed admitted admissions.

¶12. On November 1, 2018, the Bureau filed a motion for recusal on the basis that the court administrator was the daughter of the Hunters' counsel.[1] Following a hearing, that motion was denied on April 17, 2019.

¶13. The case proceeded to a bench trial on July 15, 2019. Bureau Officer Whitten testified that he and Bureau Officer Harris had presented the county judge with the warrant application. He also testified that Bureau Officer Harris was responsible for verifying the addresses on the search warrants and that he did not perform a "thorough" address check. Bureau Officer Harris testified that the address on the warrant application matched VPD's arrest records for the individual who was suspected of selling drugs. That testimony was later discredited at trial when the VPD's arrest records were admitted into evidence and clearly had the correct address of the individual suspected of selling drugs at 525 Feld Street. VPD Officer Kimble testified that he had notified Bureau Officer Storr twice of the incorrect address before the team used a battering ram on the Hunters' door.

¶14. Henry testified that he and Rita had lived at 523 Feld Street for over twenty years. Henry also testified that he had never been so scared in his life and that he felt "demoralized." Before the incident, the couple slept with the blinds open. After the incident, they closed their blinds and continued to do so for roughly three to four months. Henry also

---

[1] Judge Isadore Patrick presided over the case at the time the motion was filed. Judge Patrick retired in December 2018 and was replaced by Judge Toni Terrett. Judge Terrett retained the court administrator who had worked for Judge Patrick and who was the subject of the Bureau's motion for recusal.

testified that after the police entry, he and Rita endured jokes from the community that they were drug dealers. He also stated that they made changes to their home security system. During Henry's testimony, he testified regarding the medical-visit receipt ($2,850) and door-repair receipt ($350), both of which had previously been admitted as exhibits.

¶15. Rita testified that she was offended by the incident and had not gotten over what happened. Following the incident, someone jokingly referred to her and Henry as drug dealers, which upset her. Rita stated that she was uncomfortable in her own home and that she hears certain noises. As a result of the incident, Rita stated that she avoids law enforcement officers. Rita also testified that she missed a day of work when she took Henry to the doctor and that she did not get paid for that day even though it was an excused absence.

¶16. At the close of trial, the trial judge found that the Bureau acted in reckless disregard in executing the "no knock" warrant on the Hunters' home when it had been told twice that the wrong address was being searched. Based on that finding, the trial court awarded the Hunters $50,000 in damages. Aggrieved, the Bureau appealed.

¶17. Additional relevant facts will be discussed below, as necessary.

## ANALYSIS

### 1. Mississippi Rule of Civil Procedure 36—Requests for Admissions

¶18. On appeal, the Bureau argues that the trial court erred in allowing the Hunters to withdraw and amend their deemed admissions. Twelve days after the thirty-day deadline, the Hunters filed a motion to withdraw any deemed admissions as part of their response to

the Bureau's first motion for summary judgment. The motion included proposed responses to the request for admissions. The Hunters explained that they thought they had answered the request for admissions, and, upon realizing they had not, filed the instant motion. Ultimately, the court allowed the Hunters to withdraw and amend any deemed admitted admissions, stating that the Bureau was not prejudiced by the delay.

¶19.    Mississippi Rule of Civil Procedure 36(a) states in relevant part that a "matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . ." Rule 36(b) states that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Further, "Rule 36 is meant to provide, and should provide, an authoritative manner of procedure." *DeBlanc v. Stancil*, 814 So. 2d 796, 801 (¶24) (Miss. 2002).

¶20.    In *DeBlanc*, the Mississippi Supreme Court stated:

> While Rule 36 is to be applied as written, it is not intended to be applied in Draconian fashion. If the Rule may sometimes seem harsh in its application, the harshness may be ameliorated by the trial court's power to grant amendments or withdrawals of admissions in proper circumstances. The trial court's ruling in this regard is subject to review for abuse of discretion.

814 So. 2d at 801-02 (¶¶23-26). Here, the Hunters filed their request twelve days late, and the Bureau failed to show how the Hunters' delay prejudiced its case in any way. Therefore, we find no abuse of discretion in the trial court's decision to allow the Hunters to withdraw their deemed admissions and file amended responses to the Bureau's request for admissions.

7

## 2.     Denial of Summary Judgment

¶21.     The Bureau contends that the trial court erred in denying its other motion for summary judgment.  We review a trial court's grant or denial of summary judgment de novo, and we view the evidence in the light most favorable to the nonmoving party.  *Thomas v. Chevron U.S.A. Inc.*, 212 So. 3d 58, 60 (¶7) (Miss. 2017) (citations omitted).  As set forth in Mississippi Rule of Civil Procedure 56, "[t]he judgment sought shall be rendered . . . if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).  The nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Mississippi Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial."  M.R.C.P. 56(e).  In order to be material, a factual issue must be "outcome determinative . . . ."  *Simmons v. Thompson Mach. of Miss.*, 631 So. 2d 798, 801 (Miss. 1994) (emphasis added).  "To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim."  *Sharrieff v. DBA Auto. Two LLC*, 242 So. 3d 944, 947 (¶9) (Miss. Ct. App. 2018).

¶22.     "This Court has held that appeals from the denial of a motion for summary judgment are interlocutory in nature and are rendered moot by a trial on the merits."  *Franklin Collection Serv. Inc. v. Collins*, 206 So. 3d 1282, 1284 (¶8) (Miss. Ct. App. 2016).  In the present case, the trial court determined that a genuine issue of material fact existed as to

8

whether the Bureau acted in reckless disregard, which would prevent immunity under the MTCA. During a bench trial, the trial court heard conflicting testimony on that factual question and ultimately determined that the Bureau acted in reckless disregard when executing the search warrant. After review, we find that the trial court's denial of the Bureau's motion for summary judgment was rendered moot by the trial on the merits. *See id.* Consequently, "[i]t is not reviewable on appeal and therefore is not a basis for reversal." *Id*. at 1285 (¶10).

### 3. Recusal

¶23. The Bureau also contends that the trial court erred in denying its motion for recusal. Specifically, the Bureau argues that because the court administrator was the daughter of plaintiff's counsel, the trial judge should have recused herself pursuant to Mississippi Code of Judicial Conduct Canon 3(E)(1).

¶24. "In determining whether a judge should have recused, the standard of appellate review is manifest abuse of discretion." *Pearl River Cty. Bd. of Supervisors v. Miss. State Bd. of Educ.*, 289 So. 3d 301, 305 (¶9) (Miss. 2020) (citing *Hathcock v. S. Farm Bureau Cas. Ins. Co.*, 912 So. 2d 844, 849 (¶11) (Miss. 2005)). The Mississippi Supreme Court has stated:

> Under Canon 3 of the Code of Judicial Conduct, an appellate court, in deciding whether a judge should have disqualified himself from hearing a case[,] uses an objective standard. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application."

*Tubwell v. Grant*, 760 So. 2d 687, 689 (¶7) (Miss. 2000) (citations omitted).

¶25.    In support of its position, the Bureau cites to *Taylor v. State*, 789 So. 2d 787, 797 (¶46) (Miss. 2001), where the Mississippi Supreme Court found it "troubling" that the trial judge did not recuse herself when her court employee served as a witness in that case.  The Bureau's reliance on *Taylor* is misplaced for two reasons: (1) the court employee in the present case was not serving as a witness in the proceeding nor did she have any other direct involvement in the proceeding; and (2) in *Taylor*, the supreme court ultimately found that "Taylor failed to show a 'manifest abuse of discretion' in the judge's failure to recuse herself . . . ."  Thus, we are not persuaded by the Bureau's argument.

¶26.    In its motion for recusal and on appeal, the Bureau fails to provide any evidence to overcome the presumption that the trial judge was unbiased or acted impartially.  Consequently, we find this issue lacks merit.

### 4.    Judgment

¶27.    The Bureau asserts that the trial court erred in finding that it acted in reckless disregard in executing the "no knock" warrant.  The standard of review for a judgment entered following a bench trial is well settled.  "[T]he factual findings of a circuit court judge sitting without a jury are accorded the same deference as that of a chancellor."  *Stratton v. McKey*, 204 So. 3d 1245, 1248 (¶8) (Miss. 2016) (citing *City of Jackson v. Presley*, 40 So. 3d 520, 522 (¶9) (Miss. 2010)).  Further, the trial court's findings "are safe on appeal where they are supported by substantial, credible, and reasonable evidence."  *City of Jackson v. Law*, 65 So. 3d 821, 827 (¶15) (Miss. 2011) (quoting *City of Ellisville v. Richardson*, 913 So. 2d 973, 977 (¶13) (Miss. 2005)).  While "reasonable minds might differ on the question of

10

whether or not the officer in question acted in reckless disregard, it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence." *Id*. at 832 (¶44).

¶28. "Questions concerning the application of the MTCA are reviewed de novo." *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (¶7) (Miss. 2003) (citing *Donaldson v. Covington Cty.*, 846 So. 2d 219, 222 (¶11) (Miss. 2003)). Immunity is a question of law. *See Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (¶8) (Miss. 2003).

¶29. "Under the MTCA, a governmental entity is not liable for injuries caused by actions of its police officers unless the officers acted with 'reckless disregard of the safety and well-being' of innocent persons." *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (¶10) (Miss. 2009) (citing Miss. Code Ann. § 11-46-9(1)(c) (Supp. 2007)). "The plaintiff has the burden of proving 'reckless disregard' by a preponderance of the evidence." *Titus v. Williams*, 844 So. 2d 459, 468 (¶37) (Miss. 2003) (citing *Simpson v. City of Pickens*, 761 So. 2d 855, 859 (¶8) (Miss. 2000)).

¶30. In *Mississippi Department of Wildlife, Fisheries & Parks v. Webb*, 248 So. 3d 772, 777 (¶6) (Miss. 2018), the Mississippi Supreme Court stated:

> '[R]eckless disregard' . . . denotes 'more than mere negligence, but less than an intentional act.' 'Our case law indicates "reckless disregard" embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.' Moreover, 'reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.' Reckless disregard occurs "when the 'conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.'"

11

(citations and other quotation marks omitted).

¶31. The trial testimony revealed that the Bureau did not follow "standard procedure" in reviewing and returning the search warrants. Specifically, Bureau Officer Whitten testified that Bureau Officer Harris was responsible for verifying the addresses on the search warrants and that he did not perform a thorough check before returning them to Bureau Officer Whitten. In his deposition and at trial, Bureau Officer Harris claimed that the address on the affidavit and warrant was based on information the VPD provided to the Bureau. However, the VPD's arrest records, which were admitted at trial, showed the suspected drug dealer's address as 525 Feld Street and not the house next door at 523 Feld Street, which was owned by the Hunters. Further, Bureau Officer Storr admitted that VPD Officer Kimble, who was raised in Vicksburg and knew both the suspect and the Hunters, notified him before entry that they were at the wrong address. VPD Officer Kimble suggested they do a "knock and talk" instead. Ultimately, Bureau Officer Storr admitted that VPD Officer Kimble had notified him of the mistake, but he chose to proceed with the "no knock" warrant on that address because the warrant "was sworn to by another [Bureau] agent and was signed by a judge [and he had] no doubt [in] the authenticity of that warrant."

¶32. The safety and security of one's home is paramount in a society as ours where the rule of law reigns supreme and government is restrained by the Constitution that created it. "No knock" warrants at night are an inherently dangerous governmental operation. The trial court found the officers acted in reckless disregard by ignoring the evidence clearly before them of the wrong address and yet, despite that knowledge, failed to take any corrective steps to

12

preserve the safety of those involved, including the individuals inside the home that was the subject of the search. Upon review, we find the evidence to be "substantial, credible, and reasonable" so as to support the trial judge's finding that the Bureau acted in reckless disregard in executing the "no knock" warrant. *See Law*, 65 So. 3d at 827 (¶44). Accordingly, we affirm the trial court's judgment.

### 5.    Damages

¶33.    Finally, the Bureau argues that the trial court's $50,000 award in damages was "grossly excessive," considering the only monetary damages proven at trial were the Hunters' medical bill, totaling $2,850, and a bill for their damaged door, totaling $350.

¶34.    "[I]t is primarily the province of the jury and in a bench trial, the judge, to determine the amount of damages to be awarded[,] and the award will normally not be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." *Foster v. Noel*, 715 So. 2d 174, 183 (¶56) (Miss. 1998). We determine whether an award is excessive on a case-by-case basis. *Purdon v. Locke*, 807 So. 2d 373, 376 (¶9) (Miss. 2001). Additionally, we view the evidence in the light most favorable to the verdict. *Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992).

¶35.    The Mississippi Supreme Court has "upheld awards that were forty times the amount of the medical damages [in] *Edwards v. Ellis*, 478 So. 2d 282 (Miss. 1985)[], fourteen times the amount of damages [in] *Purdon v. Locke*, 807 So. 2d 373 (Miss. 2001)[] and thirty-eight times the amount of damages [in] *Gatewood v. Sampson*, 812 So. 2d 212 (Miss. 2002)." *Durn*, 861 So. 2d at 998-99 (¶28). Here, the trial court awarded the Hunters roughly fifteen-

and-a-half times their monetary damages. In doing so, the trial court stated the following:

> As a result of [the Bureau's] actions, Henry said he felt "demoralized." The incident had a lasting impact on both Henry and Rita's sense of security and well-being in their personal home. Henry said he felt the event was detrimental to his character. He and Rita have endured jokes and comments from others in the community about whether they are selling drugs. The Hunters incurred out-of-pocket expenses in the repair of their front door and Henry's visit to the emergency room. Rita said she has not gotten over what happened on that day. The Hunters have made changes to their home security system in response to the officers breaking into their home.

¶36. After reviewing the evidence considered by the trial court, we cannot say the damages award is "so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." *Foster*, 715 So. 2d at 183 (¶56). Therefore, we affirm the trial judge's award of $50,000.

## CONCLUSION

¶37. In summary, we find the trial court did not abuse its discretion in allowing the Hunters to withdraw and amend any deemed admitted admissions. We also find the Bureau's argument on the trial court's denial of summary judgment is moot because there was a trial on the merits. Further, we find no manifest abuse of discretion in the judge's decision not to recuse herself. Finally, we affirm the trial court's finding that the Bureau acted in reckless disregard and likewise affirm the trial court's $50,000 award in damages.

¶38. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR.**

14